and out. Arguments not to exceed 15 minutes per side. Mr. Harrison for the appellant. If you're reserving time, if you could tell me how much you have reserved, then I'll know to call upon you. Thank you, Your Honor. I would like to have three minutes for rebuttal. You may. You may proceed. Thank you. Mick Harrison for appellant.  Gary Vander Boegh. Your Honor, this case is about the right of an applicant for employment to bring an action for illegal refusal to hire under several federal statutes, several environmental statutes, including the Resource Conservation Recovery Act, the Energy Reorganization Act, and the Federal False Claims Act. Both sides seem to like this court's decision and Demske for different reasons, and it may be that Your Honor's decision on how Demske applies will control the outcome of this case. Appellant's view is that Demske applies Chevron deference or recognizes the proper application of Chevron deference. Why do we even get to Chevron deference? It seems to me that we're employees, pretty well established, pretty well known. Appellant's view, Your Honor, is that the law doesn't always use terms in the way that everyday people use those terms, and the meaning of a term in isolation, I mean, you can't really determine the intent of the Congress by looking at a term in isolation. You have to look at it in the context of the statute in which you find it. In this case, you find it in environmental statutes and the False Claims Act for a particular purpose. The purpose is to protect employees who are retaliated against when they take some action that serves the public interest by furthering the purpose of the statute. Interestingly enough, in your very answer, you said protect employees. Your client's not an employee. Well, we think that the client is an employee as a prospective employee. The Department of Labor agrees with us. There certainly are ways to protect people that are applicants. Some or all of these statutes recognize that, don't they? Some, not all. Some of these statutes do not define employee, but the Department of Labor interprets them nonetheless as the agency charged by Congress to implement these statutes as covering applicants for employment. And there's a very specific reason for that. The purpose of the statute, which is to keep the lines of communication open between the employee and potential whistleblowers and the regulatory agencies, not for the purpose of protecting the employee's rights, necessarily, but for protecting the public. We talk about a nuclear facility. An employee is working there and discovers a major safety issue that might impact the whole community. If they blow the whistle, which is what Congress intends for them to do for the best interest of the public, they're protected clearly, I think we all agree, if they're a current employee. But what's the impact on the purpose of Congress if that same person gets fired, goes to look for another job, and can't find another job because all those other future employers that they're applying to as a prospective employee refuse to hire them because of their whistleblowing and it's perfectly legal to do that? What happens to the intent of the Congress? There's a major chilling impact on keeping those lines of communication open, which is why I think the Department of Labor interprets the statutes like it does. But we still have to get to why do we go to Chevron deference. You don't get to Chevron deference unless the statutory term is ambiguous. What I'm still hung up on in that is it's clear Congress knows how to protect applicants. Congress apparently chose not to protect applicants in one or more of these statutes. So where do we get the power to read that in? I think Demske helps to some extent. Demske says that if the statute doesn't define a term, then you can go to look to the agency charged with implementing that statute for the meaning of the term. And I think that's what needs to be done here. Now, I understand Your Honor's point of view that Congress could have made our jobs a lot easier and just put in a definition of employee like it does in some places for employer and we wouldn't be here. But Congress didn't do that. Now, one reason it might not have done that is that there's a long history of applicants being protected back to the laws protecting union members, the fair labor laws. And those statutes have been interpreted to protect applicants. Some of that case law, Your Honor, is cited by the Department of Labor and cited by the appellant in our brief. So Congress may have said, OK, this is how the agencies are interpreting employee. They're interpreting it broadly for the statutes that are to be liberally construed. And so we don't need to define it. And maybe they thought they might just get in the way of a broad definition since that's the way the agencies are implementing it. I can't read the mind of the Congress, but to me, if you've got a term that's not defined and you've got the agency charged by Congress with implementing the statute, interpreting that term to include applicants, why is it plain language, why is it clear that that term doesn't protect applicants? And when you look at the purpose of the statute and interpreting that term to not protect applicants and seeing that it defeats the purpose of the statute, I don't see that that's clear. So I guess, Your Honor, I'm advocating for a rule. You're asking me the question, how do we determine that Chevron applies? I would say you look at whether the term is defined, which I think is what Dembski says. You look at whether the term can be plainly read in one way without interfering with the purpose of the statute. In this case, I don't think it can be read the appellee's way without interfering with the purpose of the statute. And you look at how the agency interprets it and the history of interpreting it and also the statutes upon which some of these statutes are based, which are being... Dembski was not an employer-employee. I think that was a master-servant question, Your Honor, in Dembski, rather than employee. I mean, my distinction, the reason I think the appellees can't take advantage of Dembski is because it was more about the conceptual distinction between a master versus a servant, whereas in our case, we're talking about two categories of servants, a current servant and an applicant to be a servant or a prospective servant. Let me put it another way. In Dembski, maybe more technically stated, the person was an employer of independent contractors who worked on the site. That is correct. Now, how do you get around Reed, the Committee for Creative Nonviolence versus Reed, that says that if Congress uses employee without defining it, Congress intended to describe a conventional master-servant relationship as understood by common law agency doctrines? You agree, do you not, there is no master-servant relationship here? No. I guess I wouldn't say that. There's a master-servant relationship between the defendant and a person who doesn't work or have a contractual relationship with them? I understand. How could that be? Well, I think it can be the way the Department of Labor interprets it to be, which I think is correct, which is... I'm trying to get away from, I know why you like the Department of Labor, I get that. Okay. But if Congress doesn't define the term and the Supreme Court tells us what the definition of the term is in that instance, why would we then ever adopt an agency interpretation that's contrary to what the Supreme Court has told us to use in the absence of a definition? I understand the question, and I think, obviously, your honors have to follow the Supreme Court, as we all do. But I don't think that Supreme Court rule that you're citing applies in this context. I think it applies in cases where there's a question as to whether someone who may be in a master relationship, like this boss or owner of the contractor, may be trying to get the benefits of a servant. I think that's what was happening in Dempsey, was the master was trying to get the benefit of a statute that was intended to protect the servant. And here, we don't have that situation. Here, if a person applies for a job and they're denied, they have an adverse financial impact from an employment decision. It may be a negative employment decision, but it's still an employment decision. So I don't think that that Supreme Court precedent, your honor, applies in these circumstances. I think it applies in situations where there's no definition of a term and dispute is whether a master may be trying to claim the benefits of the servant. At least, that's the way I read it. So that's why I don't think that's controlling in this case. So, your honor, I think the – I mean, we're going to have, I guess, a significant problem if the Sixth Circuit goes in the direction of using that authority to be controlling and saying in every case, whether it's not a definition of employee or perhaps employer, that you go back to the common law and sort it out and then take a narrow view that that does not include applicants. That's obviously going to be contrary to a longstanding Department of Labor interpretation of several statutes. It's going to be contrary to case law under other statutes like the Fair Labor laws. And there was an ERA case I just found yesterday. Your honor, I didn't have a chance to – it wasn't directly on point, because it didn't decide the question, but it was an ERA case. And in that case, the Third Circuit took it as a given that applicants were covered and it reversed. I think it was an ARB decision. So I – Do you have any court authority in support of your construction that employee means applicants? I mean, do you have any – That we do have that. Any court authority? You're relying on the Department of Labor, but do you have any court – has any court anywhere adopted your construction of the statute? Well, not under the – I don't know that I can cite something under the ERA. I'd be hard-pressed. I'm a little unaware of the weather today, your honor, so my memory isn't what it ought to be. But the – I believe I did cite case law, and the Department of Labor cited case law from the National Labor Relations Act and another of the labor union laws that are older that protect employees, even though the term is not – protect applicants, even though the term employee is not defined. So I think that's in my opening brief. That's my recollection. I don't think I can tell you off the top of my head the cases, but I think that case law is there. I've got a question as to our jurisdiction regarding the environmental statutes, the Drinking Water Act, the Clean Water Act, and the Toxic Substance Control Act. It appears to me that there are administrative remedies that must be exhausted, and then after those administrative remedies are utilized, the appeal is direct to the court of appeals. It doesn't go to the district court. To me, it doesn't appear that we have jurisdiction over those environmental claims. Can you address that? I can. I've actually dealt with that before in a couple of other cases. Your honor is correct that if this were only, let's say, a Clean Air Act case or a Toxic Substance Control Act case or clean water, safe drinking water, we wouldn't have had the option to go to federal court in the first place. We would be in the Department of Labor. Why do you have the option now? The statute is quite clear that you have to go to the administrative agency and then appeal to the court of appeals. It's a good question, your honor. There is court of appeals case law, and I would be hard-pressed to tell you it's in the Sixth Circuit, that says when you have what we call a hybrid or a mixed case where one of the statutes lets you go the federal court route and the other statutes have an administrative remedy that you can take all the claims through the, I guess you would call it, a form of, the word is escaping me, your honor, but the supplemental jurisdiction of the federal court. I realize that's not the path Congress defined for those particular statutes, so I do understand where your question comes from. It's a question of subject matter jurisdiction, and if we don't have subject matter jurisdiction, we really just can't hear it. Well, I wondered about that when I saw those other cases, but there are these hybrid cases out there, and it's analogous, your honor, to the cases which you may have seen for appeals where one appeal can go to your court and another appeal can go to the district court. I think Superfund, I think my time may be up, your honor. I'm sorry. You can finish, but this isn't a concept of supplemental jurisdiction as I see it. That allows us to take jurisdiction over state law claims primarily. You have two federal claims, so I'm assuming what you would ordinarily argue here is that the claims under these two different statutes are somehow inextricably interrelated, so therefore if you take up one, you take up another. That's how we would analyze it in other contexts. I am saying that, and that's what I think. Do we have a case that says that? Well, I wasn't anticipating that question, your honor, but I've seen those cases in my other appeals, and I could probably provide it if I was allowed after the argument, but there is a case one or more under CERCLA, the Superfund statute, because it provides appeals to go to district court, and I've had and other attorneys have had cases that go normally to the Court of Appeals, as Judge Griffin says, and the Courts of Appeals are saying we can take the Superfund claim as well, and I think this is analogous. Now, is it a federal question? I'm not saying it is. All right, thank you. You'll have your rebuttal time. Thank you, your honor. May it please the Court, Stephen Bednar, on behalf of Appley Energy Solutions, Inc. We respectfully submit to this court that this case is controlled by two Supreme Court decisions and one Sixth Circuit decision, 1992 Supreme Court decision in Darden versus in Darden, the 1989 decision in Reed, and the 2005 decision of this court that involved Lydia Demske. The analysis we submit is very straightforward. The word employee is used in all of the statutes at issue. It is undefined in all of the statutes at issue. Under the plain meaning rule, as repeatedly enunciated by the United States Supreme Court and repeatedly iterated by this court, when a term is undefined, it is given its plain and ordinary common law meaning. We've also cited to the court a case that responds to Mr. Harrison's argument that there may be some extraneous, secret, coded meaning to employee, which is 82 years of revered precedence that says the plain, obvious, and rational meaning of undefined terms governs over any curious, hidden sense that nothing but the exigency of a hard case and the ingenuity of an acute and powerful intellect would discover. In this case, the word employee is not curious, hidden. It has a very common law, ordinary meaning. Darden has defined what it means. Reed has defined what it means. And that is to be given precedence over the exigency of this hard case for Mr. Vanderboe, in which Mr. Harrison is now forced to argue that it means something other than what we have always understood it to mean and what the Supreme Court has defined it to mean in both Darden and Reed. Mr. Harrison makes a pretty persuasive or pretty forceful argument that you've got these interpretations of the Department of Labor and somehow if we say the statute means what it seems to say, then because that's contrary to the Department of Labor, we're going to upset a lot of law here and essentially we're going to be an outlier. What do you say to that? I think it's neither forceful or persuasive, and here's why. All of the administrative decisions that Mr. Harrison cites in his brief and that could be discussed at oral argument today come from the early 1980s to the early 1990s. None come after Dembski, which is decided in 2005. The most recent is the Smirnoff case, which is in 1993, and then there's also the Schultz case, which is a water case in 1995. Ten years after those administrative rulings, Dembski is decided and Dembski lays out the exact analysis that's compelled by Darden and Reed, which says we have to give this word its plain meaning in the context of an Energy Reorganization Act case. So while even if Chevron, we agree that Chevron does not apply because there is no ambiguity, but even if it did, of all the things that Chevron stands for, it does not stand for the proposition that an analysis or definition of a term vacillates with whatever the appellant suggests it means, even when it means going completely contrary to what the Supreme Court has said it means. So is the Department of Labor simply wrong or has the Department of Labor's interpretation now essentially been superseded by intervening Supreme Court law? It has been. With all due respect to us, I don't think the Department of Labor doesn't care about what we say in Dembski except in the Sixth Circuit. That's correct. So Darden, Reed is decided in 1989. That defines employee under the conventional master-servant. Darden is decided in 1992. Have there been any other circuits that have held that employee goes beyond an employer-employee or master-servant relationship following 1992? No. None that have been cited in this court, none that I'm aware of. And in contrast, if you look at page 17 of Appelee's brief, we cited to the court all of the cases in the employment setting where this court, the Sixth Circuit, has used Darden and Reed to define employee in its conventional sense in the context of Title VII, in the context of the Americans with Disabilities Act, the Age Discrimination and Employment Act. So your argument is that DOL may or may not have been right up until 89 and 92. And Dembski. For purposes of this court. And Dembski in this circuit, right. And since then, nobody has bought into DOL's interpretation. No such authority has been cited to this court, Your Honor. And in answer to the question you asked about the Dembski case, whether it involved a master-servant, let me just clarify that. Lydia Dembski was the sole shareholder of a contractor to Indiana and Michigan Power that operated in Bridgman. She was the sole shareholder to a contractor, so she was not an employee. But she did have a contractual relationship. This was an ERA case. And she engaged in protected activity and then complained because her contract was terminated. And in Dembski, this court then reviewed that situation under the Energy Reorganization Act and said she's a contractor, she's not an employee. And under the plain meaning rule adopted by Darden and Reed, which governs this, even as a contractor she doesn't have standing under the Energy Reorganization Act case. Now after the 2009 amendments to the False Claims Act, that might have been a different outcome if it had been a False Claims Act case. But Lydia Dembski had a much more significant relationship. She actually had a relationship with the power plant, with her responsibilities in maintaining the ice condensers. Whereas Gary Vanderboe here was nothing more than an arm's length removed applicant for a position who had never held any role of any kind with energy solutions. Let me jump in on that. Isn't the appellant's best argument that Mr. Vanderboe is closer to an employee than just a third-party applicant because this was his job? He had this job for 10, 15 years and he was trying to keep it. And he was an employee but for the fact that energy solutions won the contract and so he had to reapply. He was reapplying to keep the job that he had. So he's much closer to an employee, a literal employee, than just some applicant off the street. I think that is his best argument and I don't think... How do you respond to that? I don't think it's a very good one for this reason. He was an employee of an entity with whom energy solutions had no relationship and came in as a successor. And the fact that when energy solutions came in it kept all of its management employees. The grandfathering issue which is raised in the brief applied to non-management employees and Vanderboe I decided, and it is the law of the case, that Mr. Vanderboe was a management employee. He testified that he was the highest ranking official at the landfill, that the landfill couldn't operate unless he was there, he supervised employees and he was designated as a management employee. So he had no right. Isn't the purpose of the statute subverted if we essentially take the position that when the agency changes contractors the anti-retaliation provisions don't apply? No, the purpose of the statute isn't subverted because the purpose of the statute is manifest by the intent of Congress and that intent is conveyed by the words used in the statute. And the word used in the statute is employee. Not employee of a predecessor company, not applicant, but employee. And Darden and Reed tells us that to be an employee there has to be the conventional master-servant relationship. So the purpose of the statute is manifest in its words. The word is employee and that has to be imbued with what we understand it to mean under Darden and Reed. How do you address Judge Griffin's question about whether we should even get to the definition of employee in connection with several of these statutes that have exhaustion requirements? Your Honor, in all candor that issue has not been raised before Judge Griffin asked this question. When the matter was removed to federal court with the False Claims Act case after it had gone through informal administrative proceedings at the Department of Labor and formal proceedings at the Department of Labor subject matter jurisdiction was not challenged and so Judge Griffin has raised it for the first time here and I don't have any authority to speak to it. In other words, I don't have case authority. I have authority to speak to it but it hasn't been scrutinized at any point prior to this. You have authority, you just don't have an answer. I don't have an answer. That's exactly right. Judge Griffin has gone somewhere with his question where this case has not gone previously. I do have an answer, however... You would agree that we independently have to scrutinize our subject matter jurisdiction. I mean, we have to do it sui sponte. From my very first day of law school. I do, however, have an answer to Judge Griffin's question about whether there are any cases that have decided whether or not an applicant is covered and the answer to that is yes. It's a 1951 case, John Hancock vs. Mutual Life... John Hancock, Mutual Life vs. the NLRB and that is the case that these administrative decisions rely on that Mr. Harrison cites that come out of the 80s and the reason I bring that up, that case did decide that an applicant was covered under the statute and that decision, which comes out of the DC circuit in 1951, is specifically addressed and rejected in Darden by the Supreme Court in 1992 in which the Supreme Court says those cases which interpreted employee for purposes of the National Labor Relations Act and also the Social Security Act respectively are feeble precedents for unmooring the term from the common law. And so, to the extent there are cases, Darden completely obliterates them and throws them out of the water and says, in that situation, we're not going to take what the word employee means and unmoor it from its rootings, especially in the context of National Labor Relations Act and Social Security Act cases. So those NLRA cases that are cited really have no weight. There wasn't much discussion about the False Claims Act claim, I'd like to address that briefly if I may. The False Claims Act turns on the exact same analysis with respect to application of the word of employee. In the briefing, there are discussions about whether the 2009 amendments make a change to that and may potentially expand the meaning of employee to applicant. I have two responses that I'd like to emphasize. First of all, the 2009 amendments are arguably inapplicable here because this case and all of its facts are closed in 2006. Second, even if the 2009 amendments did apply, the amendments expand it from employee to contractor or agent. And the expansion to contractor or agent only further entrenched the notion that there must be an established economic relationship and that it would exclude an applicant who has no relationship. That analysis was adopted by the Fourth Circuit in the United States' Ex-Rel Aba Hussein case, which is cited in the brief, where the District of South Carolina said these amendments make clear that where there is no economic relationship that comes through a conventional employment or a contractor or a master-servant agency relationship, that there is no standing under the False Claims Act. Unless the panel has any other questions, I think I can conclude at that. Thank you. If I might hit a few points quickly. The reference to Demske as finding that a contractor is not equal to an employee that counsel raised, I don't think is entirely precise. I think the question there was more the owner of a contracting company or the boss of that contracting company. Are they equivalent to an employee for the purpose of the protections of the statute? And I think that Demske said no, and I think that was correct, that a master is not entitled to the protections of the servant. So that's one point. The law of the case argument we addressed in our brief, and for the reasons we stated there, we don't believe that this Court's discussion of whether Vanderbilt was a grandfathered employee was intended to be the ultimate merits determination on that question. That it was intended as part of an analysis of whether, for summary judgment purposes, Mr. Vanderbilt had enough evidence of motive and of constructive knowledge to survive summary judgment. Doesn't the paragraph that I wrote at 531 start out with that Vanderbilt claims that the contract provision granting grandfather employee hiring preference applies to him? And didn't I conclude, or the Court conclude, that your client has failed to present any evidence beyond his personal belief that he was a grandfathered employee under the new contract? Only non-managerial employees are considered grandfathered under the contract, and the landfill management position is specifically demoted as a managerial position. Can it be any clearer than that? The issue was raised, and was it not decided? How was it not decided by that language? I tried to articulate that as best I could in the brief, Your Honor. Based on the law of the case. Is it dicta? Because it clearly says that the grandfathered contractual provision only applies to non-managerial positions, and he is clearly a management position, and therefore the contract provision doesn't apply to him. How does that? Is it dicta? Well, I think it's either dicta or analysis dicta. It wasn't. I mean, Mr. Vanderbilt didn't get a trial on the merits of the question of his grandfathered status. Summaried out. No. The District Court didn't decide that. Only Your Honors addressed that at the Court of Appeals level, and it was for a particular purpose related to Mr. Vanderbilt's argument on motive and constructive knowledge, not on whether he had standing as basically an employee, as someone with a right of first refusal. So we never really litigated the facts of that in the District Court, and Your Honors didn't have the record for that. He didn't, you know, I would say he didn't fully put on his case for that for summary judgment, and he survived summary judgment. So I think the unique posture of this being a summary judgment appeal that Your Honors decided, and not having had a merits determination on the facts on this particular claim, makes Your Honors holding binding on motive, binding on constructive knowledge, but since neither of those defeated summary judgment because other evidence was present, I think it's a wash, and I think it goes back to the District Court to figure out, is there standing as a grandfathered employee? I mean, that's my view. I agree with you. You quoted your decision correctly, Your Honor. I read it. I was very familiar with it. Sorry, my time was up, Your Honors. All right. Thank you, Counsel. We want to make sure we get this jurisdictional question correct, obviously, and so Mr. Harrison, as the person that's invoking our jurisdiction here, would you please address that question for us within the next five days? Mr. Bednar, you can respond after, within five further days, no reply, 10-page maximum. I will, Your Honor. Everybody understand? Yes, Your Honor. Just to clarify, this is Joe Griffin's jurisdictional question? Yes. Thank you. All right. Thank you, Counsel. Case will be submitted. You may call the next case.